UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| LYNDSIE SLAVIN, individually and on behalf of all others similarly situated,<br>*Plaintiff*,<br>vs.<br>COMFRT LLC,<br>*Defendant*. | Case No. 2:25-cv-02394<br>**CLASS ACTION COMPLAINT**<br>**JURY DEMAND** |



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Table of Contents


I. Summary of the Case. ..... 1

II. Parties. ..... 1

III. Jurisdiction and Venue. ..... 2

IV. Facts. ..... 3

A. Comfrt's false and misleading emails. ..... 3

B. No adequate remedy at law. ..... 8

V. Class action allegations. ..... 8

VI. Claims. ..... 9

Count 1: Violations of Washington's Commercial Electronic Mail Act (By Plaintiff and the Class) ..... 9

Count 2: Violations of the Washington Consumer Protection Act via misleading emails ..... 10

VII. Jury Demand. ..... 12

VIII. Prayer for Relief. ..... 12




Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## I. Summary of the Case.

1. Deceptive marketing emails plague consumers' inboxes. To put an end to this, the Washington legislature enacted the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190. CEMA prohibits any person from sending a commercial email with a false or misleading subject line. RCW 19.190.020.

2. As the Washington Supreme Court has held, including false information about a product discount in the subject line of a commercial email can violate CEMA and the Washington Consumer Protection Act ("CPA"). *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

3. Defendant Comfrt LLC markets and sells hoodies, sweatpants, blankets, loungewear, and other products ("Comfrt Products" or "Products") through its website. Comfrt sends marketing emails to Washington residents advertising discounts on its Products.

4. Comfrt sends out marketing emails with subject lines claiming to offer the "Biggest Discount Ever." These subject lines refer to a 15% discount offered in the emails. Comfrt also sends out emails with subject lines claiming that this is consumers' "Last chance!" to get the discount (again referring to a 15% discount). But in reality, the 15% discount is not the biggest discount ever; it is a standard discount that Comfrt regularly offers. And it is not consumers' last chance to get this discount. The discount codes in the emails do not expire. And Comfrt regularly sends out emails offering the same, or materially-similar, 15% discounts. These marketing emails are intended to drive sales by creating the false impression that the discount is especially large and that it is consumers' last chance to receive it. These deceptive email subject lines violate CEMA and the CPA.

5. These kinds of deceptive emails are material to consumers. They make consumers more likely to open the emails, shop on Comfrt's website, and buy its products. They drive demand, sales, and profits. This is why Comfrt sends them.

6. Plaintiff is a Washington resident who received Comfrt's deceptive marketing emails. She brings this case for herself and other, similar Washington residents who received these illegal emails.

## II. Parties.

7. Plaintiff Lyndsie Slavin is domiciled in Marysville, Washington (Snohomish County).

8. The proposed class includes citizens of Washington.

9. Defendant Comfrt LLC is a Florida limited liability company that maintains its principal place of business at 382 NE 191st St. PMB 627737, Miami, Florida, 33179. It is a citizen of Florida. *See* 28 U.S. Code § 1332 (d)(10) (in a putative class action, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").

**III. Jurisdiction and Venue.**

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant. Based on Plaintiff's experience, Comfrt sends over 10 violative emails a year, to each Washington resident on its email list. Under CEMA and the CPA, each violative email entitles a consumer to $500 in statutory damages. Forbes reported that Comfrt is on track to make $160 million in revenue. [1] By population, that implies at least $3M in Washington revenue.[2] This in turn implies that Comfrt has thousands of Washington customers on its email list. If it has even 1000 such consumers on its email list, receiving 10 violative emails per year, that is $5,000,000 in statutory damages in just a single year.

11. This Court has personal jurisdiction over Defendant. Defendant advertises and sells its products and services in Washington, and knowingly sends its marketing emails to Washington consumers. Plaintiff's claims arise out of Defendant's contacts with this forum.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is additionally proper under 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state.

---

[1] https://www.forbes.com/profile/hudson-leogrande/.

[2] https://en.wikipedia.org/wiki/List_of_U.S._states_and_territories_by_population (Washington is 2.2% of the US population).



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## IV. Facts.

### A. Comfrt's false and misleading emails.

13. Comfrt markets and sells hoodies, sweatpants, blankets, loungewear, accessories, and other products. Comfrt sells its Products directly to consumers through its website: www.comfrt.com.

14. Comfrt sends marketing emails to Washington consumers, advertising 15% discounts on its products. The subject lines of these emails falsely represent that these discounts as unusually large ("It's Our Biggest Discount Ever") and that these discounts will soon be gone ("Last chance! 15% off is almost gone"). This pressures consumers to open the emails, shop on Comfrt's website, and purchase products using the discounts.

15. For example, here is an email Comfrt sent Plaintiff on January 23 of this year. The subject line proclaimed: "It's Our Biggest Discount Ever":




16. But it was not really Comfrt's biggest discount ever. It persistently offers 15% discounts.

17. As another example, here is an email Comfrt sent Plaintiff on March 5. The subject line proclaimed: "Last chance! 15% off is almost gone.":





Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066




18. This was not really the last chance to get 15% off. The discount code (COZY15) does not expire. It still worked as of October 30, 2025 (6 months later):




*Captured October 30, 2025*

19. Throughout the year, Comfrt continued to send out emails promoting this supposedly last chance discount. The following table documents emails sent to Plaintiff:


Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

| Date | Subject Line | Discount and code |
|---|---|---|
| November 16, 2024 | Welcome To The Family! | 15% (WELCOME15) |
| January 23, 2025 | Welcome To The Family! | 15% (WELCOME15) |
| January 23, 2025 | It's Our Biggest Discount Ever | 15% (COMEBACK15) |
| February 3, 2025 | It's Our Biggest Discount Ever | 15% (COMEBACK15) |
| February 4, 2025 | 98% SOLD Out | 15% (COMEBACK15) |
| February 7, 2025 | It's Our Biggest Discount Ever | 15% (COMEBACK15) |
| February 8, 2025 | It's Our Biggest Discount Ever | 15% (COMEBACK15) |
| February 20, 2025 | It's Our Biggest Discount Ever | 15% (COMEBACK15) |
| March 2, 2025 | Did you mean to leave this behind | 15% (COMFRT15) |
| March 3, 2025 | 15% off ends soon 👀 | 15% (COMFRT15) |
| March 5, 2025 | Last chance! 15% off is almost gone | 15% (COZY15) |
| April 16, 2025 | Did you mean to leave this behind? | 15% (COMFRT15) |
| April 17, 2025 | 15% off ends soon 👀 | 15% (COMFRT15) |
| April 19, 2025 | Last chance! 15% off is almost gone… | 15% (COZY15) |
| June 16, 2025 | Last chance! 15% off is almost gone… | 15% (COMFRT15) |
| July 18, 2025 | You left something cozy behind… | 15% (COMEBACK15) |
| July 19, 2025 | 15% off ends soon 👀 | 15% (COMEBACK15) |
| September 6, 2025 | Still thinking about Comfrt? | 15% (GETCOZY15) |
| September 8, 2025 | 15% off ends soon 👀 | 15% (GETCOZY15) |
| September 10, 2025 | Last chance! 15% off is almost gone… | 15% (GETCOZY15) |
| October 3, 2025 | 15% off ends soon 👀 | 15% (GETCOZY15) |
| October 5, 2025 | Last chance! 15% off is almost gone… | 15% (GETCOZY15) |

20. As this table illustrates, when the email subject lines say "Biggest Discount Ever," that is false. The November 2024 welcome email sent to Plaintiff had the same 15% discount. And when the subject lines say "Last chance! 15% off is almost gone" or "15% off ends soon," that is false. All the

discount codes listed were still active (still could be applied to obtain the discount) as of this fall. And Comfrt regularly advertised the 15% discount throughout the year.

21. By representing to consumers that the discount is time-limited, or the biggest discount ever, Comfrt creates a false sense of urgency and a false sense of value. This leads reasonable consumers to believe that, if they act now, they can get an especially large discount off Comfrt's prices; but if they wait, the discount will not be available again anytime soon.

22. Because Comfrt issued and controlled the discount codes, it knew that 15% was not really its biggest discount ever and that it was not really consumers' last chance to get it. Because Comfrt planned its own email marketing, it knew it intended to regularly advertise these discounts and keep the codes active.

23. Comfrt knows, or has reason to know, that it sends its emails containing false and misleading subject lines to Washington residents. Comfrt knows where recipients of its emails reside because (a) Comfrt has physical addresses associated with recipients' accounts or orders; and (b) Comfrt has access to data regarding the recipient including the recipient's state of residence, such as geocoordinate and IP address tracking in Comfrt's promotional emails.

24. Comfrt's commercial emails containing false and misleading information clog up inboxes with spam email, waste limited data space, and violate Plaintiff's and putative class members' statutory right to be free from deceptive emails.

25. Comfrt's commercial emails are not just an annoyance; they are material to consumers. Receiving a time-limited discount is important to consumers, and material to consumer purchasing decisions regarding purchasing Comfrt products.

26. Discounts drive purchases. Consumers are more likely to buy a product when they think they are getting a good deal that will not last. They are also willing to pay more for products, if they believe the product is worth more than they are paying, and that they are getting a substantial discount that won't be available if they don't act.

27. Research confirms that discounts are important to consumers. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering

or are undecided on making a purchase."[3] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

28. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5,6]

29. Defendant's advertisements are important to class members who receive them because they generate the false belief that if they buy now, they would get an especially large discount that won't be available later. This artificially increases consumer demand for the Products, which in turn increases the amount that Defendant can charge for its products.

30. The false belief that the Comfrt products are on sale for a limited time (or at an especially large discount) is important to recipients and causes recipients to be more likely to open the marketing emails, buy the products, buy them quickly, and pay more for them. Defendant knows this and sends the false and deceptive emails for this purpose—so that consumers are more likely to buy the products, buy them quickly, and/or pay more for them, which increases demand for Defendant's products, drives sales, allows Defendant to charge more than it otherwise could for its products, and ultimately increases Defendant's profits.

---

[3] Invesp, How Discounts Affect Online Consumer Buying Behavior (https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/) (last accessed November 16, 2025).

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html) (last accessed November 16, 2025).

[5] CXL, Creating Urgency, https://cxl.com/blog/creating-urgency/ (last accessed November 16, 2025) (increasing urgency by advertising limited time nature of promotion increased conversion rates nearly 300%).

[6] Adestra, Dynamic email content leads to 400% increase in conversions for Black Friday email (https://uplandsoftware.com/adestra/resources/success-story/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/) (last accessed November 16, 2025) (400% higher conversation rate for ad that increased urgency via countdown timer).

**B. No adequate remedy at law.**

31. Plaintiff seeks an injunction. Plaintiff is permitted to seek an injunction because she has no adequate remedy at law. Damages are not adequate because they would not stop Comfrt from continuing to transmit emails with false or misleading subject lines.

32. While Plaintiff would like to receive, open, read and rely on truthful marketing emails from Defendant, advertising product discounts, she cannot rely on Defendant's emails absent a Court ordered injunction forbidding Comfrt from deceptively advertising its sales in its subject lines.

**V. Class action allegations.**

33. Plaintiff brings the asserted claims on behalf of the proposed class of:

- all Washington residents who received promotional emails from Comfrt with subject lines advertising sales or discounts on Comfrt Products.

34. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

35. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are at least thousands of Class members in Washington.

36. Class members can be identified through Comfrt's electronic mailing lists.

***Existence of Common Questions***

37. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

(1) whether Defendant's email subject lines regarding the availability of its discounts are false or misleading;

(2) whether Defendant's email subject lines violate CEMA;

(3) whether Defendant's email subject lines violate the CPA;

(4) the greater of actual damages or statutory damages due to Plaintiff and the proposed Class.

*Typicality & Adequacy*

38. Like members of the proposed Class, Plaintiff received emails from Comfrt that contain false or misleading subject lines regarding Comfrt's discounts.

39. There are no conflicts of interest between Plaintiff and the Class.

*Superiority*

40. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**<u>Count 1: Violations of Washington's Commercial Electronic Mail Act</u>**

**(By Plaintiff and the Class)**

41. Plaintiff incorporates each and every factual allegation set forth above and below.

42. Plaintiff brings this cause of action on behalf of herself and members of the Class.

43. CEMA prohibits the sending of a commercial email that "[c]ontains false or misleading information in the subject line." RCW 19.190.020. Advertising discounts in the subject line of a promotional email, with fake time pressure, violates CEMA. *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

44. Defendant is a "person" under CEMA. RCW 19.190.010(11).

45. As alleged more fully above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages that contained false or misleading information in the subject line to Plaintiff's and Class members' electronic mail addresses.


Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

46. Defendant sent these emails to Plaintiff and Class members for the purpose of promoting Comfrt's Products for sale.

47. As a result, these promotional emails contain false or misleading information in the subject line, in violation of CEMA.

48. Defendant knew or had reason to know that it transmitted such emails to email addresses held by Washington residents, including Plaintiff.

49. Based on the emails Defendant sent to Plaintiff, Defendant has sent at least thousands of emails to Washington recipients, with similar false or misleading subject lines.

50. Defendant's acts and omissions violated RCW 19.190.020(1)(b).

51. Defendant's acts and omissions injured Plaintiff and Class members.

52. The balance of equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this pleading, so without the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

53. Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**Count 2: Violations of the Washington Consumer Protection Act via misleading emails**

**(By Plaintiff and the Class)**

54. Plaintiff incorporates each and every factual allegation set forth above and below.

55. Plaintiff brings this cause of action on behalf of herself and members of the Class.

56. Plaintiff and Class members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

57. As alleged above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiff and Class members that contained false or misleading information in the subject line.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

58. A violation of CEMA is a per se violation of the CPA. RCW 19.190.030(1).

59. A violation of CEMA establishes all elements of the CPA as a matter of law.

60. As alleged more fully above, Comfrt's transmission of commercial electronic messages to Plaintiff and Class members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

*Unfair Acts or Practices*

61. As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount for only a limited time when that was not true.

62. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting how long a discount is available. Plaintiff and the Class' injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.

*Deceptive Acts or Practices*

63. As alleged in detail above, Comfrt's representations in email subject lines that its emailed discounts were available only for a limited time, or were especially large, are deceptive.

64. Comfrt's representations were likely to deceive, and did deceive, Plaintiff and other reasonable recipients. Comfrt knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

65. Comfrt's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

66. Comfrt's acts and omissions caused injury to Plaintiff and Class members. In addition, violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law.

67. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW 19.86.090.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

68. Under the CPA, Plaintiff and Class members are entitled to seek, and do seek, the greater of actual damages and statutory damages of $500 per email that violates CEMA. In addition, Plaintiff and Class members seek treble damages, which are permitted under the CPA, including for CEMA violations. Plaintiff seeks treble damages to further Plaintiff's and Class members' financial rehabilitation, encourage citizens to bring CPA actions, deter Comfrt and other persons from committing CEMA violations, and punish Comfrt for its false and misleading advertising practices.

69. Plaintiff and Class members are also entitled to, and seek, injunctive relief prohibiting Comfrt's further violations of the CPA.

## VII. Jury Demand.

70. Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. Prayer for Relief.

71. Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- The greater of actual or statutory damages, treble damages, and punitive damages where applicable;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

Dated: November 25, 2025

Respectfully submitted,

By: */s/ Jonas Jacobson*

Jonas B. Jacobson (WA Bar No. 62890)
jonas@dovel.com
Simon Franzini (WA Bar. No. 63689)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401

Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Counsel for Plaintiff*